UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

KENNETH HARRIS,

    Plaintiff,

v.                                       Case No. 07-C-678

GREGORY GRAMS, LINDA
HINICKLE, KALLY RYAN,
ROBERT HUMPHREYS, JANEL NICKEL
SGT. FINK, C/O GITTELMAN, C/O HEISZ,
C/O BOEDFELD, SGT. DELONG

    Defendants.

## PLAINTIFF'S FIRST AMENDED COMPLAINT

PLEASE TAKE NOTICE that plaintiff Kenneth Harris, by his attorneys, Garvey McNeil & McGillivray, S.C. complains against defendants Gregory Grams, Linda Hinickle, Kally Ryan, Janel Nickel, Robert Humphreys, Janel Nickel, Sergeant Fink, Correctional Officer Gittelmen, Correctional Officer Heisz, Correctional Officer Boedfeld, and Sergeant Delong.

### PRELIMINARY STATEMENT

1. This is a civil action brought pursuant to 42 U.S.C. § 1983 seeking damages on behalf of plaintiff for claims arising out of the First and Eighth Amendments to the United States Constitution. This action alleges that defendants Hinickle, Ryan, Fink, Gittelman, Heisz, Boedfeld, and Delong knowingly and deliberately refused to provide plaintiff with medical care. Moreover, this action alleges that defendants Grams,

Hinickle, Ryan, Humphreys, and Nickel retaliated against Plaintiff because he filed internal grievances and initiated a John Doe proceeding.

## JURISDICTION

2. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and law of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of plaintiff's civil rights.

3. This Court has jurisdiction to grant damages pursuant to 42 U.S.C. § 1983.

4. This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) in that such claims arise out of the same case, controversy, transaction or occurrence as the federal law claims arise.

## VENUE

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this district.

## PARTIES

6. Plaintiff Kenneth Harris ("Harris") is a state prisoner incarcerated at the Kettle Moraine Correctional Institution, who has been convicted in Wisconsin Circuit Court and sentenced to the Wisconsin prisons under Chapter 973 of the Wisconsin Statutes. At all time relevant hereto, Plaintiff Marshall was incarcerated at the Columbia Correctional Institution ("CCI"), located in Portage, Wisconsin.

7.  Defendant Gregory Grams ("Grams") is, and at all relevant times was, the warden of CCI. Grams promulgated, directed, approved or implemented all policies and practices at the institution, and had supervisory responsibilities over all employees. Grams had responsibility for ensuring the safety, health and well-being of those inmates entrusted to his care, including Harris. At all times relevant hereto, he has acted under color of state law. Grams is sued in his individual capacity.

8.  Defendant Linda Hinickle is, and at all relevant times was, a sergeant at CCI. As a sergeant she is responsible for the custody, control, safety and well-being of inmates entrusted to her care. Defendant Hinickle was personally responsible for Harris' care while he was incarcerated at CCI, and participated in the violations described herein. At all times relevant hereto, she has acted under color of state law. Hinickle is sued in her individual capacity.

9.  Defendant Kally Ryan is, and at all relevant times was, a correctional officer at CCI. As a correctional officer, she is responsible for the custody, control, safety and well-being of inmates entrusted to her care. Defendant Ryan was personally responsible for Harris' care while he was incarcerated at CCI, and participated in the violations described herein. At all times relevant hereto, she has acted under color of state law. Ryan is sued in her individual capacity.

10. Defendant Robert Humphreys, was employed at all relevant times as the Deputy Warden at CCI. As Deputy Warden, he promulgated, directed, approved or implemented all policies and practices at the institution, and had supervisory responsibilities over all employees. Defendant Humphreys had responsibility for

ensuring the safety, health, and well-being of those inmates entrusted to his care, including Harris. At all times relevant hereto, he has acted under color of state law. Deputy Humphreys is sued in his individual capacity.

11. Defendant Janel Nickel is, and at all relevant times was, the security director at CCI. As security director, Defendant Nickel, under the supervision of the Deputy Warden, is responsible for all security activities within CCI, and is also responsible for the development, implementation and monitoring of CCI's goals, policies and procedures, including those related to the provision of medical and mental health care to inmates such as Harris. At all times relevant hereto, she has acted under color of state law. Defendant Nickel is sued in her individual capacity.

12. Defendant Fink is, and at all relevant times was, a sergeant at CCI. As a sergeant, he is responsible for the custody, control, safety and well-being of inmates entrusted to his care. Defendant Fink was personally responsible for Harris' care while he was incarcerated at CCI, and participated in the violations described herein. At all times relevant hereto, he has acted under color of state law. Fink is sued in her individual capacity.

13. Defendant Gittelman is, and at all relevant times was, a correctional officer at CCI. As a correctional officer, he is responsible for the custody, control, safety and well-being of inmates entrusted to his care. Defendant Gittelman was personally responsible for Harris' care while he was incarcerated at CCI, and participated in the violations described herein. At all times relevant hereto, he has acted under color of state law. Gittelman is sued in his individual capacity.

14. Defendant Heisz is, and at all relevant times was, a correctional officer at CCI. As a correctional officer, he is responsible for the custody, control, safety and well-being of inmates entrusted to his care. Defendant Heisz was personally responsible for Harris' care while he was incarcerated at CCI, and participated in the violations described herein. At all times relevant hereto, she has acted under color of state law. Heisz is sued in his individual capacity.

15. Defendant Boedfeld is, and at all relevant times was, a correctional officer at CCI. As a correctional officer he is responsible for the custody, control, safety and well-being of inmates entrusted to his care. Defendant Boedfeld was personally responsible for Harris' care while he was incarcerated at CCI, and participated in the violations described herein. At all times relevant hereto, she has acted under color of state law. Boedfeld is sued in his individual capacity.

16. Defendant Delong is, and at all relevant times was, a sergeant at CCI. As a sergeant he is responsible for the custody, control, safety and well being of inmates entrusted to his care. Defendant Boedfeld was personally responsible for Harris' care while he was incarcerated at CCI, and participated in the violations described herein. At all times relevant hereto, she has acted under color of state law. Delong is sued in his individual capacity.

17. At all times relevant hereto, all defendants have acted within their scope of employment with the Department of Corrections.

## STATEMENT OF FACTS

18.     On or about March 29, 2005, Plaintiff began experiencing severe abdominal pain.

19.     On or about April 7, 2005, Plaintiff's abdominal pain grew worse and Plaintiff was unable to eat without vomiting. The Health Services Unit ("HSU") medical staff at CCI treated Plaintiff.

20.     On or about April 12, 2005, Plaintiff again alerted medical staff that he was suffering from intense abdominal pain.

21.     On April 15, 2005, Plaintiff's abdominal pain grew more intense and Plaintiff began noticing large amounts of blood in his stool.

22.     Plaintiff was sent to the HSU, where Suzanne Ward RN ("Nurse Ward") examined him and immediately sent him to the emergency room of a local hospital.

23.     At the emergency room, the attending physician could not readily determine the cause of Plaintiff's abdominal pain and blood loss, but prescribed a pain medication named "Keterolac", also called "Toradol", prescribed to be taken no sooner than eery 6 hours as needed for pain by needle injection.

24.     Toradol does not come in pill form, so it must be injected with a needle.

25.     Plaintiff returned to CCI. In addition to the Toradal, Plaintiff was prescribed two additional types of pain medication: (1) Acetominophen with codeine ("Tylenol"), and (2) a Gastrointestinal cocktail ("G.I. Cocktail") which consists of 15cc Maalox, and 15cc Lidocaine. The Tylenol could only be administered every 6 hours by prescription.

26. HSU had the duty to administer Plaintiff's pain medication Toradal by injection and corrections staff had the duty to arrange for HSU staff to see Plaintiff.

27. On or about April 16, 2005 at 8:00 a.m., Plaintiff began experiencing severe abdominal pain and alerted correctional staff. As a result, Plaintiff was taken to the HSU and injected with Toradol.

28. On or about April 16, 2005, around 5:00 p.m., Plaintiff needed another injection of Toradol. Because there was not a nurse available, Nurse Lindy Muchow ("Nurse Muchow"), was called in from home and injected Plaintiff with Toradol.

29. On or about April 17, 2005, around 1:00 a.m., Plaintiff needed an injection of Toradol. Nurse Muchow was again called in from home and injected Plaintiff with Toradol.

30. Plaintiff could not receive another injection before 7:00 a.m. on April 17, 2005.

31. On or about April 17, 2005, at 3:00 a.m., Sgt. Boodry gave Plaintiff a dose of Tylenol. Accordingly, Plaintiff could not receive another dose of Tylenol before 9:00 a.m.

32. On or about April 17, 2005, during shift change, Sgt. Boodry informed Defendants Hinickle and Ryan of Plaintiff's medical condition and his need for pain medication.

33. Sgt. Boodry also informed Defendants Hinickle and Ryan that Plaintiff had Tylenol available in the unit medicine box, as well as Toradol at the HSU. In

addition, Sgt. Boodry alerted Defendants Hinickle and Ryan when Plaintiff had last received pain medication.

34.     Defendants Hinickle and Ryan knew about Plaintiff's medical condition and his need for pain medication.

35.     On or about April 17, 2005, just before 7:00 a.m., Plaintiff informed Defendant Ryan that he was in severe abdominal pain and asked her to call the HSU for the injection of pain medication.   Plaintiff was bent over and holding his stomach while he spoke with Defendant Ryan.

36.     Defendant Ryan refused to do so and stated that she was not calling anyone.

37.     Plaintiff explained that he was in severe pain and pleaded with Defendant Ryan to call the HSU for the injection of pain medication.

38.     Defendant Ryan repeatedly refused to call the HSU and stated again and emphatically that she was not calling anyone.  Defendant Ryan then told Plaintiff to use the pills he had in his medicine box instead.

39.     Plaintiff informed Defendant Ryan that the pills were a narcotic, and could not take them again until 9:00 a.m., per physician's orders.

40.     Plaintiff also informed Defendant Ryan that if she called the HSU they would give him his 7:00 a.m. injection of Toradol.  Defendant Ryan refused.

41.     Plaintiff again pleaded with Defendant Ryan to call the HSU for his injection of pain medication.

42. Defendant Ryan then placed a call to Defendant Hinickle. Afterwards, Defendant Ryan told Plaintiff to ask Defendant Hinickle for assistance.

43. Plaintiff began to approach Defendant Hinickle but as he did so, Defendant Hinickle yelled at him to go away because she did not want to hear about his request.

44. Plaintiff informed Defendant Hinickle that he was in severe pain and needed his medication. Defendant Hinickle still refused to assist Plaintiff, and ordered Plaintiff to return to his cell.

45. Plaintiff obeyed Defendant Hinickle's order but returned soon after because of the pain, and asked Hinickle to review the unit logbook to confirm his need for pain medication.

46. Defendants Hinickle and Ryan again refused to call the HSU for medical help, and ordered Plaintiff to go to his cell.

47. Plaintiff refused to return to his cell and demanded that Defendants Hinickle and Ryan call for a prison shift supervisor so he could get medical attention.

48. Defendant Ryan responded by stating, "Blow it out of your ass!"

49. Plaintiff then sat down at a table and refused to return to his cell. He also told Defendants that he would be filing grievances against them for refusing to assist him.

50. Defendant Ryan then yelled to Defendant Hinickle to "push the button" so that a response team would subdue Plaintiff. Defendant Hinickle did so.

51. As the Response Team approached Plaintiff, Correctional Officer Lehman ("Lehman"), ordered the other members of the team to not touch the Plaintiff since he recognized that Plaintiff had a medical condition.

52. Response Team member, Correctional Officer Neuman ("Neuman") also commented that the Defendants' actions were unnecessary. Neuman then went and retrieved Plaintiff's pills out of the unit medicine box and told Plaintiff to take them.

53. Plaintiff explained to Neuman that he could not take them, but that he had an injection of pain medication waiting for him at the HSU.

54. Plaintiff was taken by wheelchair to the HSU, and immediately sent back to the emergency room of the local hospital where he was injected with Toradol.

55. Upon his return, Plaintiff was placed in DS-1 at CCI and disciplined for "disobeying orders" because of his request for medical attention. DS-1 is the most restrictive of the CCI's segregation units, and houses inmates for disciplinary reasons.

56. On or about April 18, 2005, while housed in segregation, Plaintiff repeatedly asked for help because of his pain.

57. Plaintiff and other inmates banged on the door of his segregation cell in order to attract the attention of correctional officers.

58. Despite hearing Plaintiff ask for help Defendants Fink, Gittelman, Heisz, Boedfeld, and Delong refused to contact HSU so that Plaintiff would receive the pain medication.

59. On or about April 28, 2005, Plaintiff filed with the Columbia County, Wisconsin, Circuit Court, a Petition for John Doe Investigative proceeding pursuant to

Wisconsin Statutes § 968.26 alleging that Defendants Hinickle and Ryan had committed crimes against him by denying him medical care.

60.     In response, Defendants Grams, Humphreys, and Nickel placed Plaintiff under investigation for allegedly soliciting staff, a charge that could lead to placement in segregation and additional time to his sentence.   In making these charges, Defendants misrepresented the facts and falsified the reports against Plaintiff.

61.     Defendants caused Plaintiff to suffer physical and mental injuries as a result of their refusal to provide medical care.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

62.     Plaintiff has exhausted all administrative remedies available to him.

## NOTICE OF CLAIM

63.     Plaintiff properly served a notice of claim pursuant to Wis. Stat. § 893.82.

## FIRST CAUSE OF ACTION UNDER 42 U.S.C. § 1983: FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN VIOLATION OF THE EIGHTH AMENDMENT

64.     Plaintiff reincorporates and realleges all of the previous allegations contained above in their entirety and further alleges as follows:

65.     Plaintiff had a serious medical condition that Defendants knew required medical attention.

66.     By denying Plaintiff adequate medical care, despite having knowledge of Plaintiff's medical condition, Defendants have acted with deliberate indifference to Plaintiff's need of medical care in violation of the Eighth Amendment to the U.S. Constitution.

67. Because of Defendants' deliberate indifference to Plaintiff's right to adequate medical care, plaintiff suffered, and continues to suffer physical and mental injuries.

68. Defendants acted maliciously and with disregard to the Harris' rights by denying him medical care.

## SECOND CAUSE OF ACTION UNDER 42 U.S.C. § 1983: RETALIATION AGAINST PLAINTIFF IN VIOLATION OF THE FIRST AMENDMENT

69. Plaintiff reincorporates and realleges all of the previous allegations contained above in their entirety and further alleges as follows:

70. Plaintiff was engaged in constitutionally protected conduct when he filed grievances and pursued a John Doe proceeding against Defendants Ryan and Hinickle.

71. Defendants' issuance of conduct reports as well as Defendants' placement of Harris under investigation for soliciting staff were adverse actions taken against Plaintiff in retaliation of Harris' engagement in constitutionally protected conduct.

72. Because of Defendant's retaliatory acts, Plaintiff has suffered damages as a result of the violation of his First Amendment rights.

## THIRD CAUSE OF ACTION: NEGLIGENCE

73. Plaintiff reincorporates and realleges all of the previous allegations contained above in their entirety and further alleges as follows:

74. As a state prisoner, Plaintiff was entitled to appropriate medical care and treatment.

75. Defendants had a duty to ensure the health and safety of Plaintiff.

76. Defendants knew or should have known that Plaintiff was in need of medical attention.

77. Defendants' refusal to provide medical care to Plaintiff was a breach of their duty to ensure Harris' safety, and was intended to and did cause Plaintiff to suffer unreasonable pain, discomfort, mental anguish, and suffering for which they are liable.

78. Defendants acted maliciously and with disregard to Harris' well being.

## FOURTH CAUSE OF ACTION:
## DAMAGES CAUSED BY CIVIL CONSPIRACY

79. Plaintiff reincorporates and realleges all of the previous allegations contained above in their entirety and further alleges as follows:

80. Defendants agreed to and did conspire to violate Harris' First and Eighth Amendment Rights.

81. In furtherance of the conspiracy, Defendants Ryan and Hinickle refused to provide Harris medical care despite knowing that Harris was in need of such care.

82. Defendants' refusal to provide Harris medical care violated his Eighth Amendment rights.

83. Defendants Ryan, Hinickle, Grams, Humphreys, and Nickel falsified documents, misrepresented facts and placed Harris under investigation for allegedly soliciting correctional staff in furtherance of a conspiracy to violate Harris' First Amendment Rights.

84. Defendants' actions violated Harris' First Amendment Right to engage in the constitutionally protected conduct of filing grievances against Defendants and requesting a John Doe proceeding.

85. As a result of Defendants' conspiracy, Plaintiff has suffered unreasonable pain, discomfort, and suffering for which they are liable.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that the Court:

A. Issue a judgment declaring that the actions of Defendants described herein are unlawful and violated plaintiff's rights under the Constitution and the laws of the United States;

B. Grant plaintiff compensatory damages for plaintiff's physical injury, pain and suffering and emotional and psychological damages in an amount to be determined;

D. Grant Plaintiff punitive damages;

E. Grant Plaintiff his reasonable attorneys fees and costs and expert fees pursuant to 42 U.S.C. § 1988 and other applicable law; and

F. Grant Plaintiff such other relief as the Court considers just and proper.

**JURY DEMAND**

Plaintiff demands a jury of twelve persons.

Dated this day of June 20, 2008.

**GARVEY McNEIL & McGILLIVRAY, S.C.**

s/Pamela McGillivray
Pamela R. McGillivray
SBN 1034194
Carlos A. Pabellon
SBN 1046945
David C. Bender
SBN 1046102
634 West Main Street, Suite 101
Madison, Wisconsin 53703
Telephone: (608)256-1003
Facsimile: (608)256-0933
mcgillivray@gmmattorneys.com
pabellon@gmmattorneys.com
bender@gmmattorneys.com

Case: 3:07-cv-00678-slc   Document #: 26   Filed: 06/20/08   Page 15 of 15